**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 8 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RONALD KEITH BOYD,

      Petitioner - Appellant,

   v.

RON WARD, Warden, Oklahoma
State Penitentiary,

      Respondent - Appellee.

No. 98-6309

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-97-525)**

---

David B. Autry, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Seth S. Branham, Assistant Attorney General (W. A. Drew Edmondson, Attorney General and Sandra D. Howard, Assistant Attorney General, with him on the brief), Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **ANDERSON** , **TACHA** , and **KELLY** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

Ronald Keith Boyd was convicted and sentenced to death for the murder of Oklahoma City police officer Richard Riggs. He appeals the denial of his habeas petition seeking to overturn that conviction and sentence. We affirm.

**BACKGROUND**

On the evening of January 7, 1986, Mr. Boyd, Byron Gibbs, Joe Jackson, and Lenora Denise Dunn were in a green van driven by Mr. Gibbs. At Mr. Boyd's request, they stopped at a convenience store called Tom's Market. Mr. Boyd and Mr. Jackson used the pay telephone. Mr. Boyd and Ms. Dunn discussed robbing the store, and Mr. Boyd handed a gun to Ms. Dunn, who used the weapon to rob the store. Mr. Gibbs testified that, after the robbery, Ms. Dunn handed the gun back to Mr. Boyd. After the robbery, the four proceeded to a nearby Phillips 66 gas station, where Mr. Boyd again used a pay telephone.

Oklahoma City Police officers Richard Riggs and Craig Gravel responded to the report of an armed robbery at Tom's Market, and were told the suspect was a black female in a green van. The officers noticed the green van parked at the Phillips 66 station and pulled their police cruiser into the station to investigate. Officer Gravel approached the rear of the van and saw that it was occupied by a female and two males. Officer Riggs walked toward Mr. Boyd, who was outside the van talking on a pay telephone. Officer Riggs twice asked Mr. Boyd to get off

-2-

the phone. Mr. Boyd then dropped the receiver and approached Officer Riggs with his hands in his pockets. Officer Gravel testified that he heard Officer Riggs ask Mr. Boyd to remove his hands from his pockets. This request was immediately followed by two shots, which struck Officer Riggs in the abdomen and chest. The shot to the chest was fired from very close range. He died soon thereafter from the gun shot wounds.

A passing motorist, Stephen Gericke, testified that he saw the person talking on the phone shoot Officer Riggs. Mr. Jackson also testified that he saw Mr. Boyd fire shots from his pocket.

Officer Gravel was unable to see the shooting because he was behind the van at the time. He testified that, after the shots were fired, he saw someone standing at the rear of the van. Officer Gravel testified that he ducked and ran toward the gasoline pumps. He heard several shots fired as he was running. The green van began to roll out of the gas station parking area and eventually stopped after striking a fence across the street. Officer Gravel fired at the van as it rolled out of the station; Officer Riggs, although fatally wounded, also fired at the moving van. Officer Gravel called for back-up, other officers arrived and all the occupants of the van, except Mr. Boyd, were arrested at the scene. Ms. Dunn was arrested on the opposite side of the fence into which the van had rolled. Mr. Boyd fled on foot through an adjacent golf course. The next day, a Colt .38

revolver was found at the golf course. The State presented evidence that the bullets which killed Officer Riggs came from that Colt .38. The weapon was damaged in a manner consistent with having been struck by a bullet.

Mr. Boyd was arrested the next day at the home of a friend, Reginald Walker. Mr. Walker testified that, before the police arrived, Mr. Boyd told him:

> he had panicked . . . . That . . . Officer Riggs approached him, and he turned around, and he said he just blacked out. Blacked twice. And he just, you know, the gun went off and another shot went off, and he turned and ran. . . . [He panicked because] there had been a robbery and . . . he had just recently gotten out of jail for some problem that he had had. . . . And that he was afraid of being arrested.

Tr. Vol. III at 623. At the time of his arrest, Mr. Boyd had some abrasions on his hands.

After his arrest, Mr. Boyd was interviewed by Detective Bob Horn. He admitted to Detective Horn that he was on the telephone at the Phillips 66 gas station when the officers arrived. He also stated that he saw a hitchhiker reach in his backpack, pull out a gun and fire at Officer Riggs.

Mr. Boyd was charged by information with murder in the first degree by malice aforethought and robbery with firearms. He was convicted of both. In the penalty phase of the trial, the jury found the following three aggravating circumstances: (1) the murder was committed for the purpose of avoiding arrest or prosecution; (2) the existence of a probability that Mr. Boyd would commit acts of violence which would constitute a continuing threat to society; and (3) the

-4-

victim was a peace officer killed in the performance of his duties. Mr. Boyd was sentenced to death for the murder conviction and fifty years imprisonment for the robbery with firearms. The conviction and sentence were affirmed on direct appeal. Boyd v. State, 839 P.2d 1363 (Okla. Crim. App. 1992), cert. denied, 509 U.S. 908 (1993).

Mr. Boyd then filed an application for post-conviction relief in state court and requested an evidentiary hearing. The state court denied the petition and did not hold an evidentiary hearing. That denial was affirmed on appeal. Boyd v. State, 915 P.2d 922 (Okla. Crim. App.), cert. denied, 519 U.S. 881 (1996). Mr. Boyd then filed the present habeas petition in federal district court. The court denied his request for an evidentiary hearing and denied the petition. The court granted Mr. Boyd a certificate of appealability as to all issues raised in the habeas petition.

On appeal from that denial, Mr. Boyd argues thirteen major issues: (1) trial counsel was ineffective in both the guilt/innocence and penalty phases of his trial; (2) appellate counsel was ineffective; (3) his due process rights were violated by the state's introduction of unreliable and misleading scientific evidence; (4) his due process rights were violated by the court's failure to instruct the jury on the lesser included offenses of second degree murder and first degree manslaughter; (5) his due process rights were violated by prosecutorial misconduct occurring in

the guilt/innocence and the penalty phases of the trial; (6) his Eighth and Fourteenth Amendment rights were violated by the court's failure to instruct the jury on the mitigating circumstance that Mr. Boyd had no previous convictions for violent crime; (7) he was denied the right to call certain witnesses in support of his defense; (8) his due process rights were violated by the court's failure to give accomplice corroboration instructions; (9) his Eighth and Fourteenth Amendment rights were violated by the introduction of evidence of unadjudicated acts in the penalty phase of the trial; (10) the "continuing threat" aggravator is unconstitutionally vague and overbroad, in violation of the Eighth and Fourteenth Amendments; (11) the court failed to limit the jury's consideration of the "avoid arrest" aggravator; (12) various jury instructions given in the penalty phase violated the Eighth and Fourteenth Amendments; and (13) he was denied an evidentiary hearing in federal court.

Within those thirteen issues, Mr. Boyd argues many subsidiary issues: more than a dozen specific instances of trial counsel ineffectiveness; numerous instances of appellate counsel ineffectiveness; multiple subsidiary issues with respect to the testimony of various witnesses, including firearms expert Sergeant Golightly and medical examiner Dr. Choi; multiple instances of alleged prosecutorial misconduct; and multiple subsidiary issues with respect to jury instructions in both phases of the trial.

The habeas provisions have been amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under amended 28 U.S.C. § 2254(d), a state prisoner will be entitled to federal habeas corpus relief only if he can establish that a claim adjudicated by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Further, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). That presumption of correctness is rebuttable only "by clear and convincing evidence." Id.

The parties do not dispute the applicability of these provisions on appeal. The parties also do not attempt to further define these standards of review. We have acknowledged that "the AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). We note also that the Supreme Court has granted certiorari in a case involving the interpretation of the AEDPA, which we presume will resolve some of these issues. See Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), cert. granted, 119 S. Ct. 1355, 67 U.S.L.W. 3608, 3613 (April 5, 1999) (No. 98-8384). Pending that resolution, for

completeness of disposition and for purposes of this case only, without creating any standard for this circuit in other cases, we elect to review Mr. Boyd's contentions on their merits, giving deference to state court decisions where such deference has been accorded in the past. Thus, we defer to state court determinations of state law, see Davis v. Executive Dir. of Dept. of Corr., 100 F.3d 750, 771 (10th Cir. 1996), and to state factual findings, see 28 U.S.C. § 2254(e)(1); see also Case v. Mondragon, 887 F.2d 1388, 1392-93 (10th Cir. 1989) (interpreting the predecessor to § 2254(e)(1)).

## I. Ineffective Assistance of Counsel

Mr. Boyd alleges he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel at both stages of his trial. Some of his claims of ineffective assistance of counsel were raised on direct appeal and denied on their merits. Others were first raised in post-conviction proceedings, where the Oklahoma Court of Criminal Appeals examined their merits in the context of a claim of ineffective assistance of appellate counsel. The federal district court addressed their merits.

On direct appeal, Mr. Boyd argued that counsel was ineffective in the guilt/innocence phase by not adequately investigating and preparing for trial, by introducing evidence of Mr. Boyd's other crimes, by failing to attempt to suppress

-8-

Mr. Boyd's statement to police implicating a hitchhiker, and by failing to request lesser included offense instructions. Mr. Boyd also claimed his counsel was ineffective in the penalty phase by failing to impeach witnesses and failing to present adequate mitigating evidence. The Oklahoma Court of Criminal Appeals rejected all these claims on the merits, finding (1) counsel's investigation and preparation for trial did not prejudice Mr. Boyd; (2) there was no prejudicial implication of Mr. Boyd's involvement in another crime; (3) the failure to seek suppression of Mr. Boyd's statement was not prejudicial; (4) the failure to seek lesser included offense instructions did not constitute ineffectiveness where the evidence did not warrant such instructions; (5) counsel's manner of impeaching witnesses was tactical; and (6) Mr. Boyd had not shown that his sentence would have been different even if counsel had presented certain mitigating evidence. See Boyd, 839 P.2d at 1373-75.

In post-conviction proceedings, Mr. Boyd argued appellate counsel was ineffective for failing to raise four meritorious claims, as well as for failing to raise ten specific instances of trial counsel ineffectiveness. Mr. Boyd also raised the issue of trial counsel's ineffectiveness directly. The four allegedly meritorious claims Mr. Boyd argued appellate counsel should have raised were "1) issues arising from two State witnesses' expert testimony; 2) issues regarding an instruction on unadjudicated offenses in the second stage of trial; 3) specific

comments alleged to be prosecutorial misconduct, . . . and 4) the issue of accomplice instructions." Boyd, 915 P.2d at 925. The court rejected these arguments, concluding that "none of them meet both Strickland requirements." Id.

The ten claimed instances of ineffective trial counsel were: (1) failure to cross-examine and impeach firearms expert Sergeant Golightly adequately; (2) failure to adequately cross-examine medical examiner Dr. Choi; (3) failure to use photographs of the crime scene to establish material facts favorable to Mr. Boyd; (4) failure to adequately cross-examine and impeach Mr. Gericke; (5) failure to use available evidence to impeach Mr. Jackson's claims that he saw Mr. Boyd shoot Officer Riggs; (6) failure to adequately cross-examine Mr. Gibbs; (7) failure to investigate and produce readily available evidence favorable to Mr. Boyd; (8) failure to introduce Ms. Dunn's criminal and substance abuse history; (9) failure to use a crime scene diagram to rebut the State's theory that Mr. Boyd shot Officer Riggs; and (10) failure to offer evidence in the penalty phase regarding an informant's statement, evidence Mr. Boyd had not been convicted of a violent offense, and mitigating evidence. See id. at 926.

The Oklahoma Court of Criminal Appeals held that any new direct challenges to trial counsel's effectiveness were barred either by waiver or by res judicata. See id. at 924 & n.6. The court accordingly considered only whether

appellate counsel was ineffective in failing to argue the ten claims. The court concluded that appellate counsel was not ineffective. See id. at 926-27. Mr. Boyd then filed the present petition in federal district court, which also rejected Mr. Boyd's ineffectiveness claims on their merits. [1]

## A. Ineffective Assistance of Counsel Standards

Claims of ineffective assistance of counsel, whether trial or appellate, are mixed questions of law and fact which are reviewed de novo. See Miller v. Champion, 161 F.3d 1249, 1254 (10th Cir. 1998) (applying AEDPA); Newsted v. Gibson, 158 F.3d 1085, 1090 (10th Cir. 1998), cert. denied, 119 S. Ct. 1509 (1999) (appellate counsel). To establish ineffective assistance of counsel, a

---

[1]The State recognizes, with respect to ineffectiveness claims, we held in English v. Cody, 146 F.3d 1257 (10th Cir. 1998), that the Oklahoma procedural bar rule requiring that all ineffective assistance of trial counsel claims be raised on direct appeal or forfeited applies "in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone." Id. at 1264. We further held that "[a]ll other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied," id., a question which we did not attempt to definitively answer in English. The first part of the English two-part test for limiting the application of Oklahoma's procedural bar rules is satisfied in this case because trial and appellate counsel differed. The State asserts that "some" of Mr. Boyd's claims of ineffective assistance not raised on direct appeal can be resolved on the trial record alone, and therefore can be procedurally barred.

Because (1) it is unclear whether certain of Mr. Boyd's ineffectiveness claims can be resolved on the trial record alone, (2) it is unclear whether Oklahoma's special remand rule is adequately and evenhandedly applied, and (3) ineffective assistance of appellate counsel could excuse any procedural default, we decline to view any of his claims as procedurally barred.

petitioner must prove that counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial with a reliable result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, Mr. Boyd must overcome the presumption that counsel's conduct was constitutionally effective. See Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). Specifically, he "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (quotation omitted). For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong. See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).

To establish prejudice, Mr. Boyd must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 694; see also Newsted, 158 F.3d at 1090. If the alleged ineffective assistance occurred during the guilt/innocence stage, we determine whether there is a reasonable probability the jury would have had reasonable doubt regarding guilt. See Strickland, 466 U.S. at 695. In assessing prejudice, we look at the totality of the evidence, not just the evidence helpful to Mr. Boyd. See Cooks v. Ward, 165 F.3d 1283, 1293 (10th Cir. 1998).

If the alleged ineffectiveness occurred during the sentencing phase, we consider whether there is a "reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695; see also Cooks, 165 F.3d at 1296 (requiring court to consider strength of the government's case and the aggravating factors the jury found as well as the mitigating factors that might have been presented).

We "may address the performance and prejudice components in any order, but need not address both if [Mr. Boyd] fails to make a sufficient showing of one." Id. at 1292-93; see also Davis, 100 F.3d at 760 (noting that court can proceed directly to prejudice without addressing performance).

When appellate counsel is alleged to be ineffective, we review with great deference counsel's decision to omit an issue on appeal, see United States v. Cook, 45 F.3d 388, 394 (10th Cir. 1995), and reverse only if counsel fails to argue a "dead-bang winner." See id. at 395 (defining "dead-bang winner" as "an issue which was obvious from the trial record, . . . and one which would have resulted in a reversal on appeal"). The Sixth Amendment does not "require an attorney to raise every nonfrivolous issue on appeal." Id. at 394. Because the alleged deficiencies on appeal relate to trial counsel's conduct, we review the

claims of ineffective assistance of appellate counsel on their merits, along with the claims of ineffective assistance of trial counsel.

**B. Alleged Ineffectiveness in Guilt/Innocence Stage**

Mr. Boyd has alleged numerous instances of trial counsel ineffectiveness in the guilt/innocence phase of the trial. He claims trial counsel was ineffective in (1) not adequately investigating and preparing for trial; (2) introducing evidence of other crimes; (3) failing to attempt to suppress Mr. Boyd's statement to police that a hitchhiker shot Officer Riggs; (4) failing to adequately cross-examine and/or impeach various witnesses, including Sergeant Golightly, Dr. Choi, Mr. Gericke, Mr. Jackson and Mr. Walker; (5) failing to develop and use other evidence he believes was favorable to him and/or would undermine the State's theory of the case; (6) failing to introduce Ms. Dunn's criminal and substance abuse history; and (7) failing to request lesser included offense instructions and accomplice instructions.

As we have stated, the Oklahoma Court of Criminal Appeals rejected most of these claims on their merits (at least indirectly, under the rubric of effective assistance of appellate counsel), finding that Mr. Boyd failed to establish ineffectiveness and/or prejudice under Strickland. After carefully reviewing the record in this case, we agree that Mr. Boyd has failed to establish deficient

-14-

performance and prejudice, as required by Strickland. Under any view of the AEDPA standards, we conclude that the state court's determinations on ineffective assistance of counsel were neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were they "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

### 1. Trial Tactics and Strategy

We note that "counsel's duty to investigate all reasonable lines of defense is strictly observed in capital cases." Nguyen v. Reynolds, 131 F.3d 1340, 1347 (10th Cir. 1997), cert. denied, 119 S. Ct. 128 (1998). However, those accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been the best. Many of Mr. Boyd's claims of ineffectiveness involve challenges to trial strategy and tactics (how best to cross-examine and/or attempt to impeach witnesses, what evidence to introduce, what defense theory will be most plausible). Even assuming that Mr. Boyd established deficient performance, we conclude he has shown no prejudice under Strickland—no reasonable probability that, had counsel not committed the errors he now claims were committed, the outcome of the case would have been different. Bearing in mind that, in

-15-

evaluating prejudice, we look at the "totality of the evidence," Cooks, 165 F.3d at 1293, we find no reasonable probability that the jury would have reached a different verdict.

The record in this case is "replete with evidence of [Mr. Boyd's] guilt," id., including eyewitness testimony by Mr. Jackson and Mr. Gericke, as well as Mr. Boyd's admission to Mr. Walker, all indicating that Mr. Boyd did the shooting. Further, the murder weapon was found along the path of Mr. Boyd's flight from the murder scene. While his counsel clearly could have more vigorously attempted to undermine the State's theory of the case, there was no reasonable probability of success, given the strength and amount of evidence presented by the State. [2]

We therefore conclude that Mr. Boyd has failed to establish both deficient performance and prejudice with respect to his trial counsel's representation. We likewise conclude that appellate counsel was not constitutionally ineffective in failing to argue trial counsel's ineffectiveness.

---

[2]Further, our review of the record reveals that trial counsel did in fact vigorously cross-examine Mr. Gericke and Mr. Jackson. Additionally, trial counsel's closing argument indicates that, for example, the decision to admit Mr. Jackson's statement that Mr. Boyd may have been trying to arrange a cocaine deal at the time of the shooting (which Mr. Boyd now argues was highly prejudicial and indicative of counsel's ineffectiveness) was tactical. See Tr. Vol. V at 868.

-16-

## 2. Lesser Included Offense Instructions

Mr. Boyd also alleges ineffectiveness in counsel's failure to request instructions on the lesser included offenses of second degree murder or first degree manslaughter. The Oklahoma Court of Criminal Appeals held there was no ineffectiveness in the failure to seek lesser included offense instructions where the evidence did not warrant such instructions under Oklahoma law. Under 28 U.S.C. § 2254(e)(1), we must afford a presumption of correctness to any factual findings underlying the conclusion that the evidence was insufficient to justify lesser included offenses instructions. See Houchin, 107 F.3d at 1469-70; Williamson v. Ward, 110 F.3d 1508, 1513 & n.7 (10th Cir. 1997).

To the extent Mr. Boyd argues the state court erroneously interpreted and applied state law, that does not warrant habeas relief, see Estelle v. McGuire, 502 U.S. 62, 67 (1991), absent a determination that the state law violation rendered the trial fundamentally unfair. See Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999). We perceive no such fundamental unfairness.

To the extent he argues there was a violation of Beck v. Alabama, 447 U.S. 625 (1980), we reject his argument. In Beck, the Supreme Court held that a capital defendant was entitled to have the trial court instruct the jury on a lesser included, noncapital offense, if the evidence would support such an instruction. Such a requirement avoids presenting the jury with an all-or-nothing choice of

-17-

either convicting the defendant of the capital crime, for which the only sentence is death, or setting the defendant free.

We have held that Beck does not require an instruction on a lesser included, noncapital offense, where the jury does not face an all-or-nothing choice, such as in Oklahoma where, despite a guilty verdict on a capital offense, the sentencer still has the option of imposing a sentence less than death at the sentencing proceeding. See United States v. McVeigh, 153 F.3d 1166, 1197 (10th Cir. 1998) (distinguishing Beck from situation where jury convicting defendant of capital crime could still reject death sentence during sentencing proceeding), cert. denied, 119 S. Ct. 1148 (1999) (citing Hopkins v. Reeves, 118 S. Ct. 1895, 1902 (1998) (distinguishing Beck from case where three-judge panel that determined sentence, after capital conviction, could sentence defendant to life imprisonment rather than death)).[3] We have also, however, applied Beck even where there is a later opportunity to sentence to life imprisonment rather than death and inquired whether the instruction sought is in fact a lesser included offense of the capital

---

[3]The Supreme Court in Hopkins observed that the option to sentence at a later time to something less than death was not the "crucial distinction" between Hopkins, finding no constitutional violation, and Beck, finding a constitutional violation. The crucial distinction "is the distinction between a State's prohibiting instructions on offenses that state law recognizes as lesser included, and a State's refusing to instruct on offenses that state law does not recognize as lesser included." Hopkins, 118 S. Ct. at 1902 n.7. The former is unconstitutional, while the latter is not.

crime and whether there is evidence to support the lesser included offense.

Assuming, arguendo , Beck applies to this case, it provides Mr. Boyd no relief.

Mr. Boyd argues his counsel should have sought a lesser included offense instruction on second degree "depraved mind" murder and on first degree manslaughter. Oklahoma defines second degree "depraved mind" murder as a homicide "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect death of any particular individual." Okla. Stat. Ann. tit. 21, § 701.8(1). Subsequent to Mr. Boyd's conviction, the Oklahoma Court of Criminal Appeals held that second degree "depraved mind" murder is not, under Oklahoma law, a lesser included offense of first degree malice murder. See Willingham v. State , 947 P.2d 1074, 1081-82 (Okla. Crim. App. 1997), cert. denied , 118 S. Ct. 2329 (1998). At the time of his trial, however, courts treated second degree "depraved mind" murder as a lesser included offense of first degree malice murder. See id. at 1081 (noting that 1976 statutory revision resulted in second degree "depraved mind" murder no longer being lesser included offense of first degree malice murder, but that Oklahoma case law "[a]pparently . . . failed to recognize this change in the statutes").

Oklahoma defines first degree manslaughter, in relevant part, as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a

cruel and unusual manner, or by means of a dangerous weapon." Okla. Stat. Ann. tit. 21, § 711(2). It is a lesser included offense of first degree murder. See Lewis v. State, 970 P.2d 1158, 1165-66 (Okla. Crim. App. 1999).

Mr. Boyd principally relies upon the testimony of Mr. Walker, who recounted Mr. Boyd's statement admitting shooting Officer Riggs but stating that he (Mr. Boyd) had "blacked out" during the shooting, to support his argument that there was evidence supporting lesser included instructions on both second degree "depraved mind" murder and first degree manslaughter. The state court found that the evidence did not support the giving of those instructions. That conclusion is not "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Any subsidiary factual findings are presumptively correct. 28 U.S.C. § 2254(e)(1); see Case, 887 F.2d at 1392-93. We defer to any subsidiary interpretations of state law. See Davis, 100 F.3d at 771. Because the evidence did not support the giving of those lesser included instructions, counsel was not ineffective in failing to request them.

### 3. Accomplice Instructions

Finally, Mr. Boyd argues trial counsel was ineffective in failing to request an instruction that, under Oklahoma law, Mr. Jackson was an accomplice whose testimony required independent corroboration. The Oklahoma Court of Criminal

Appeals rejected this argument in post-conviction proceedings, holding that, while Mr. Jackson had been originally charged with felony murder in this case, the charge had been dismissed for insufficient evidence, so "he could not have been charged as an accomplice at the time of the trial." Boyd, 915 P.2d at 926. A claimed violation of state law does not warrant habeas relief, unless it deprived Mr. Boyd of a fundamentally fair trial. See Maes v. Thomas, 46 F.3d 979, 983-85 (10th Cir. 1995). We perceive no such fundamental unfairness in this case. [4] Appellate counsel was not ineffective in not arguing this issue either.

In sum, we conclude that neither trial counsel nor appellate counsel rendered constitutionally ineffective assistance in connection with the guilt/innocence phase of the trial, or any issues arising therefrom.

## C. Alleged Ineffectiveness in Penalty Phase

Mr. Boyd argues his counsel was ineffective in the penalty phase of the trial because he (1) failed to impeach witnesses; (2) failed to present mitigating

---

[4]Moreover, the jury heard Mr. Jackson testify that he had been in the van with Mr. Boyd just prior to the shooting, as well as that Mr. Jackson was testifying pursuant to an agreement with the district attorney's office which included the proviso that Mr. Jackson would not be prosecuted for his involvement in the robbery and shooting of Officer Riggs. Thus, to the extent an accomplice instruction would have caused the jury to evaluate critically Mr. Jackson's testimony, the jury already had ample reason to evaluate his testimony with a healthy dose of suspicion.

evidence; (3) failed to offer evidence regarding an informant's statement; and (4) failed to offer evidence that Mr. Boyd had not been convicted of a violent crime. He also argues appellate counsel was ineffective in failing to argue issues concerning an instruction about unadjudicated offenses which was given in the penalty phase. Arguments one and three relate to trial tactics. The Oklahoma court rejected these claims, finding that counsel's conduct involved strategic or tactical decisions made within the parameters of reasonable professional competence. We agree.

Mr. Boyd's counsel presented no mitigating evidence in the penalty phase. Mr. Boyd argues his counsel should have introduced affidavits of persons who knew him as a youth in Tennessee who would have testified regarding his good character had they been contacted by counsel. Mr. Boyd also argues his counsel should have introduced evidence that he had not been convicted of a violent crime.

Failure to present mitigating evidence is not per se ineffective assistance of counsel. See Brecheen v. Reynolds, 41 F.3d 1343, 1368 (10th Cir. 1994). However, it can constitute ineffectiveness if the failure was not due to a tactical decision. See Newsted, 158 F.3d at 1100. Even if we assume the failure to present mitigating evidence in the form of testimony from childhood acquaintances and family members is deficient performance, we perceive no

prejudice from that failure in this case. In assessing prejudice in the penalty phase, we bear in mind the available mitigating evidence presented and the strength of the State's case and the aggravating factors the jury actually found. See id. Here, aside from the childhood testimonials, Mr. Boyd identifies little other available mitigating evidence, and the overall case against Mr. Boyd was strong. The prosecution presented substantial aggravating evidence, including the facts of the crime itself (Mr. Boyd's murder of a police officer to try to avoid prosecution for a robbery), as well as his unadjudicated robberies and plans to rob, and his threatened firearms assault on Oklahoma City Police Officer Schoenberger. [5]

By contrast, the character evidence Mr. Boyd argues should have been presented was remote in time. There is no reasonable probability that the jury would have found it sufficiently persuasive to offset the substantial aggravating evidence presented. Similarly, we discern no prejudice in counsel's failure to introduce evidence that Mr. Boyd had no previous convictions for violent

---

[5]Mr. Jackson testified that Mr. Boyd told him of four armed robberies he had committed and of his plans to commit another armed robbery. Officer Schoenberger testified that he had earlier stopped Mr. Boyd on two occasions. The first time, Officer Schoenberger stopped Mr. Boyd in a car following a report of a burglary in which shots had been fired. He found a loaded pistol near Mr. Boyd's hand. The second time, the officer also stopped Mr. Boyd in a car following a report of an armed robbery. He testified that Mr. Boyd was armed and that, while Officer Schoenberger searched Mr. Boyd, Mr. Boyd "went for [a] gun," and then "took off running." Tr. Vol. V at 940.

offenses. Although Mr. Boyd's counsel did not specifically present evidence to that effect, his examination of Detective Horn and Officer Schoenberger made it clear that Mr. Boyd had not in fact been charged with any violent offenses. The prosecution did present evidence of unadjudicated offenses, however, so the jury could easily infer that, had Mr. Boyd been convicted of a prior violent offense, the prosecution would have presented evidence to that effect. Thus, the jury got the substance of the evidence Mr. Boyd wished presented to it—i.e., that he had not been *convicted* of any violent offenses.

Mr. Boyd also argues his counsel was ineffective in failing to object to an instruction given in the penalty phase of the trial "which permitted the jury to consider the mere allegation that Mr. Boyd had committed unadjudicated offenses without giving the prosecution any burden of proof," Appellant's Br. at 37. He further argues appellate counsel was ineffective in failing to raise this issue on appeal. The Oklahoma Court of Criminal Appeals held that this instruction "did not misstate the law." Boyd, 915 P.2d at 925-26. We have held that the admission of evidence of unadjudicated crimes in a sentencing proceeding does not violate due process. See Hatch v. Oklahoma, 58 F.3d 1447, 1465 (10th Cir.

1995).[6] We therefore perceive no prejudice from counsel's failure to object to the instruction, nor from appellate counsel's failure to argue this issue on appeal.

In sum, we conclude that neither trial nor appellate counsel rendered constitutionally ineffective assistance in connection with the penalty phase of the trial, or any issues arising therefrom.

## II. Admission of False or Misleading Expert Testimony

Mr. Boyd challenges the introduction of the testimony of police ballistics expert, Sergeant Golightly, and the medical examiner, Dr. Choi, claiming that their testimony was false or misleading. Because Mr. Boyd raised this issue for the first time in his state post-conviction proceeding, the Oklahoma Court of Criminal Appeals considered the merits of this claim only in determining that defense counsel was not ineffective in failing to raise the claim on direct appeal. See Boyd, 915 P.2d at 924 n.6, 925. The state court determined that "nothing in the materials before the Court suggests that Officer Golightly's testimony was demonstrably false," and that Dr. Choi's testimony was "neither groundless nor

---

[6]Additionally, the jury was instructed that it had to find the existence of any aggravating circumstance beyond a reasonable doubt, and the unadjudicated offenses were offered as proof of one such circumstance (the continuing threat aggravator). If the jury found that aggravating circumstance proven beyond a reasonable doubt, it must have found those unadjudicated offenses were proven beyond a reasonable doubt. We presume the jury followed the instructions.

misleading." See id. at 925. We presume that factual finding is correct. See 28 U.S.C. § 2254(e)(1); see also Case, 887 F.2d at 1393.

We have already rejected Mr. Boyd's claim that his counsel was ineffective in failing to adequately cross-examine and/or impeach these expert witnesses. We now also conclude that the state court's determination that the testimony was neither false nor misleading is presumptively correct, and Mr. Boyd has not rebutted that presumption.

### III. Failure to Instruct on Lesser Included Offenses

In addition to arguing that counsel was ineffective in failing to seek lesser included offense instructions and to argue this issue on appeal, Mr. Boyd also argues that the trial court should have sua sponte given such instructions. As indicated in our discussion rejecting this issue as an ineffectiveness claim, the Oklahoma Court of Criminal Appeals addressed the merits of this issue and determined there was insufficient evidence in the record to support giving the particular instructions. We afford a presumption of correctness to that factual determination, 28 U.S.C. § 2254(e)(1).[7]

---

[7]As we indicated in our discussion of this issue as an ineffectiveness claim, there is a genuine question as to whether the Beck analysis upon which this argument relies even is applicable to this case. Assuming arguendo that it does apply, we reject it on its merits.

## IV. Prosecutorial Misconduct

Mr. Boyd argues that the prosecutor engaged in the following misconduct in the guilt/innocence and/or the penalty phases of the trial: (1) endorsing the misleading evidence of Sergeant Golightly and Dr. Choi; (2) arguing that Mr. Boyd "executed" Officer Riggs; (3) arguing Mr. Boyd was trying to kill Officer Gravel; (4) inciting societal alarm, engaging in name calling and urging that the death penalty must be imposed due to victim sympathy; (5) telling the jury it must have courage to convict and to impose the death penalty; (6) diminishing the jury's responsibility for determining punishment by invoking the police investigation and the prosecutor's decision-making authority; and (7) injecting speculative other crimes evidence by arguing that Mr. Boyd was going to use the robbery proceeds to buy cocaine.

On direct criminal appeal, the Oklahoma Court of Criminal Appeals determined that the prosecution's guilt/innocence phase closing argument that Mr. Boyd attempted to kill Officer Gravel was a reasonable inference to be drawn from the evidence and thus a reasonable argument relative to the evidence. See Boyd, 839 P.2d at 1368. With respect to the alleged penalty phase prosecutorial misconduct, the court determined that most of the challenged comments were reasonable based on the evidence. See id. at 1368-69. Further, the court determined that no comments led the jury to believe that responsibility for the

-27-

death sentence rested elsewhere. See id. at 1369. The federal district court determined that none of the prosecutor's comments either individually or in combination changed the outcome of the proceedings or denied due process.

A prosecutor's improper comment or argument will require reversal of a state conviction only where the remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986). Inquiry into the fundamental fairness of a trial can be made only after examining the entire proceedings. See Donnelly, 416 U.S. at 643.

A review of the entire proceedings convinces us that the state court correctly resolved the merits of this issue. None of the comments, even if improper, were significant enough to influence the jury's decision. In light of the strong evidence of guilt and the weight of the aggravating circumstances, there is no reasonable probability that the outcome would have been different without the alleged misconduct. [8]

### V. Failure to Instruct That Mr. Boyd had Never Been Convicted of Violent Crime

---

[8]Mr. Boyd also argues, albeit with little separate analysis, that appellate counsel was ineffective in failing to argue this issue on appeal. Given our disposition of the merits of this issue, we perceive no ineffectiveness.

In addition to arguing that counsel was ineffective in failing to seek an instruction that Mr. Boyd had never been convicted of a violent crime and to argue the issue on appeal, Mr. Boyd also argues the failure to give that instruction violated his Eighth and Fourteenth Amendment rights. On direct appeal, the Oklahoma Court of Criminal Appeals rejected this argument, finding that "there was no evidence to support the requested instruction," Boyd, 839 P.2d at 1369, and noting that the jury was instructed to consider any mitigating evidence. The federal district court agreed.

The Supreme Court has held that the Eighth Amendment does not require each mitigating circumstance to be set forth in a jury instruction. See Buchanan v. Angelone, 118 S. Ct. 757, 761, 763 (1998). So long as the jury is not prevented from considering any mitigating evidence, there is no particular manner in which such evidence must be presented to the jury. Here, the jury was instructed that it could consider any mitigating evidence. As we discussed supra in connection with the ineffectiveness claim, the substance of the information Mr. Boyd wished the jury to hear—that he had never been convicted of a violent crime—was before the jury. Thus, even if the state court erred when it concluded, on direct appeal, that "no evidence" supported the giving of the instruction at issue, such error does not warrant habeas relief. There is no reasonable likelihood that the jury applied the mitigating evidence instructions

-29-

such that the jury was prevented from considering any constitutionally relevant evidence. See Boyde v. California, 494 U.S. 370, 380 (1990).

### VI. Denial of Defense Witnesses

Mr. Boyd argues that the trial court constitutionally erred when it precluded him from calling the prosecuting attorneys as witnesses during the penalty phase, to have them testify that Mr. Boyd had never been charged with any of the unadjudicated offenses attributed to him. Mr. Boyd argues that the trial court's refusal to permit defense counsel to call those prosecutors deprived him of both his right to compulsory process and his right to present evidence in mitigation of a death sentence. The Oklahoma Court of Criminal Appeals determined that Mr. Boyd had failed to establish that it was necessary to have the prosecuting attorneys testify. See Boyd, 839 P.2d at 1369-70. The federal district court agreed, noting that defense counsel could have presented the same evidence in a number of different ways and that he did succeed in putting it on through Detective Horn.

Clearly established Supreme Court precedent holds that a defendant's right to due process and compulsory process includes the right to present witnesses in his defense. See Washington v. Texas, 388 U.S. 14, 18-19 (1967); see also Richmond v. Embry, 122 F.3d 866, 871-72 (10th Cir. 1997) (citing Supreme

Court authority), cert. denied , 118 S. Ct. 1065 (1998). Mr. Boyd must show, however, that the preclusion of a defense witness resulted in a fundamentally unfair trial, see Richmond , 122 F.3d at 872 (citing Supreme Court authority), an inquiry that turns on the "materiality of the excluded evidence to the presentation of the defense." Id. "Evidence is material if its suppression might have affected the trial's outcome." Id.

Defense counsel was able to elicit, through Detective Horn, the uncontested fact that Mr. Boyd had never been charged with any crime resulting from the unadjudicated offenses. Thus, the alleged suppression of testimony by the prosecuting attorneys on the matter had no effect on the trial's outcome.

In addition, clearly established Supreme Court precedent requires that a capital sentencer "'not be precluded from considering, *as a mitigating factor* , any aspect of a defendant's character or record, and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" Eddings v. Oklahoma , 455 U.S. 104, 110 (1982) (quoting Lockett v. Ohio , 438 U.S. 586 (1978)). "As long as the mitigating evidence is within 'the effective reach of the sentencer,' the requirements of the Eighth Amendment are satisfied." Johnson v. Texas , 509 U.S. 350, 368 (1993) (quoting Graham v. Collins , 506 U.S. 461, 475-76 (1993)). Because Mr. Boyd was able to present evidence to the jury indicating that he had not been charged in connection with the unadjudicated

offenses attributed to him during the penalty phase, he is entitled to no habeas relief on this ground.

### VII. Accomplice Testimony

Mr. Boyd argues that the trial court erred in failing to instruct the jury, sua sponte, on the need for corroboration of Mr. Jackson's testimony, as required under Oklahoma law for accomplice testimony. See Okla. Stat. Ann. tit. 22, § 742. In state post-conviction proceedings, in the context of denying Mr. Boyd's claim that his appellate attorney was ineffective for failing to raise this argument on direct appeal, the Oklahoma Court of Criminal Appeals held that Mr. Boyd was not entitled to this instruction under Oklahoma law because Mr. Jackson was not an accomplice. See Boyd, 915 P.2d at 925-26. The federal district court agreed.

Oklahoma requires that the testimony of an accomplice be corroborated in at least one material fact. See Moore v. Reynolds, 153 F.3d 1086, 1106 (10th Cir. 1998). The federal constitution, however, "does not prohibit convictions based primarily on accomplice testimony." Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir. 1995). Although federal habeas relief is unavailable for state law errors, see, e.g., id. at 1238, an error of state law might rise to the level of a constitutional violation required for habeas relief if it resulted in a fundamentally unfair trial.

See, e.g. , Tyler v. Nelson , 163 F.3d 1222, 1227 (10th Cir. 1999) (reviewing state trial court's refusal to give requested jury instruction). No such error occurred here. The Oklahoma state court held no state law violation occurred, and we defer to that determination. See Davis , 100 F.3d at 771. Even were there a state law violation, no fundamental unfairness resulted. Defense counsel was able to challenge Mr. Jackson's testimony in a number of ways, to get Mr. Jackson to admit he had lied at one point to the police, see Tr. Vol. III at 673, to point out that Mr. Jackson was testifying pursuant to an agreement with the State to have unrelated charges dropped, and to get Mr. Jackson to admit that he was "looking out for [his] own neck," id. at 683, that prosecutors had told Mr. Jackson that "they wanted to dump this whole thing on" Mr. Boyd, id. at 700, that the reason he was testifying was to help himself, and that he would have lied to do so, see id. at 697-98.

## VIII.  Unadjudicated Offenses

Mr. Boyd argues his Eighth and Fourteenth Amendment rights were violated by the introduction of his unadjudicated offenses in the penalty phase. He acknowledges that our decision in Hatch v. Oklahoma , 58 F.3d 1447 (10th Cir. 1995) forecloses this argument.

### IX. "Continuing Threat" Aggravator

Mr. Boyd argues the "continuing threat" aggravator is unconstitutionally vague and overbroad as interpreted and applied by the Oklahoma courts. He also argues, assuming its validity, that there was insufficient evidence supporting it.

Mr. Boyd acknowledges that our decision in _Nguyen v. Reynolds_, 131 F.3d 1340 (10th Cir. 1997) forecloses the argument that the aggravator as applied in Oklahoma is unconstitutional. _See_ _Castro v. Ward_, 138 F.3d 810 (10th Cir.) (following _Nguyen_), _cert. denied_, 119 S. Ct. 422 (1998); _Sellers v. Ward_, 135 F.3d 1333 (10th Cir.) (same), _cert. denied_, 119 S. Ct. 557 (1998). The evidence supporting the "continuing threat" aggravator was evidence of unadjudicated offenses, including several armed robberies. Because we have held that such offenses may support the finding of the "continuing threat" aggravator, _see_ _Hatch_, 58 F.3d at 1465, we hold that there was sufficient evidence supporting that aggravating circumstance.

### X. Failure to Limit Application of "Avoid Arrest" Aggravator

Mr. Boyd argues that the trial court erred in not, sua sponte, instructing the jury to limit its consideration of Oklahoma's aggravating circumstance applicable when a murder is committed in the defendant's attempt to avoid lawful arrest or prosecution. The Oklahoma Court of Criminal Appeals held that, because the

-34-

words of the statute defining this aggravator, with which the trial court instructed the jury, were "specific" and "readily understandable," there was no need for any further limiting instruction. Boyd, 839 P.2d at 1371. The federal district court agreed, and further determined that failure to give a limiting instruction did not render the trial fundamentally unfair.

A constitutionally valid aggravating circumstance may not describe circumstances existing with each and every murder, and also may not be unconstitutionally vague. See, e.g., Tuilaepa v. California, 512 U.S. 967, 972 (1994); see also, e.g., Ross v. Ward, 165 F.3d 793, 800 (10th Cir. 1999). An aggravating circumstance will not be unconstitutionally vague if there is a common sense core of meaning that juries can grasp. See Tuilaepa, 512 U.S. at 973.

The trial court's instructing the jury according to the statutory language, that this aggravating circumstance exists if the defendant committed the murder for the purpose of avoiding or preventing a lawful arrest or prosecution, meets this constitutional standard. Cf. Davis, 100 F.3d at 769-70 (upholding a similar aggravating circumstance in Colorado, where defendant committed murder to prevent victim of a contemporaneously or recently perpetrated offense, itself not inherent or necessarily incident to murder, from becoming witness to antecedent crime).

-35-

Mr. Boyd argues that, although the jury was instructed to find this aggravating circumstance if the evidence established that he committed the murder to avoid arrest, the Oklahoma Court of Criminal Appeals, when it reviews the finding of this aggravator, further narrows its application to only those murders where the defendant seeks to avoid arrest "for an underlying, contemporaneous felony." Appellant's Opening Br. at 66 (citing Barnett v. State, 853 P.2d 226 (Okla. Crim. App. 1993)). Thus, Mr. Boyd argues the trial court should have limited the jury's consideration of this aggravator to inquire only whether Mr. Boyd was seeking to avoid arrest for the armed robbery immediately preceding the murder, not the earlier unadjudicated armed robberies he had apparently committed during the several months preceding the murder. He asserts that the aggravator was therefore applied too broadly.

Mr. Boyd misinterprets Oklahoma law, including Barnett. Oklahoma cases specifically require only that the predicate crime for this aggravator be separate and distinct from, rather than significantly contributing to, the murder. See Barnett, 853 P.2d at 233-34; see also Delozier v. State, No. F 96-764, 1998 WL 917032 at *7 (Okla. Crim. App. Dec. 31, 1998). The focus is on the defendant's intent, whether proved by the defendant's own statement or through circumstantial evidence. In this case, there is no reasonable likelihood that the jury interpreted the instruction in an unconstitutional manner. To the extent Mr.

-36-

Boyd argues that the trial court committed some error of state law, he can obtain no habeas relief absent a showing that the error rendered the trial fundamentally unfair. We perceive no such unfairness here.

### XI. Penalty Phase Jury Instructions

Mr. Boyd argues that errors in the penalty stage jury instructions denied his Eighth and Fourteenth Amendment rights in three ways: (1) the instructions as a whole improperly implied that unanimous agreement was necessary before mitigating evidence could be taken into account; (2) the instructions improperly permitted the jury to ignore mitigating evidence; and (3) instructions seven and nine improperly permitted the jury to weigh the totality of the aggravating circumstances against each mitigating circumstance rather than requiring the jury to weigh the aggregate mitigating factors against each aggravating circumstance.

On direct appeal, the Oklahoma Court of Criminal Appeals held that there was no substantial possibility that a rational juror could have construed the instructions in an improper way. The federal district court agreed. "[O]ur standard for determining whether jury instructions violate the [c]onstitution is 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant

-37-

evidence.'"  Duvall, 139 F.3d at 791 (quoting  Boyde v. California, 494 U.S. 370, 380 (1990));  accord Davis, 100 F.3d at 775.

With respect to Mr. Boyd's argument that the instructions improperly implied that mitigating circumstances had to be found unanimously, we rejected a virtually identical challenge to virtually identical instructions in  Duvall and Castro.  Those decisions foreclose Mr. Boyd's arguments here.

Mr. Boyd also argues that instruction number eight permitted the jury to choose to ignore mitigating evidence.  Instruction number eight provided as follows:

> Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame.  The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

O.R. 132 (No. 8).  We reject Mr. Boyd's argument.  The use of the word "may" does not alone compel the conclusion that the jury was empowered to ignore mitigating evidence.  See Pickens v. State, 850 P.2d 328, 339 (Okla. Crim. App. 1993) (rejecting argument that this instruction permitted jury to disregard mitigating evidence).  Moreover, instruction number nine told the jury it "shall" consider certain minimum mitigating circumstances and "may" consider any additional mitigating circumstances.  O.R. 133 (No. 9).  There is no reasonable likelihood that the jury applied the instructions in such a way that it was

-38-

prevented from considering mitigating evidence. See Johnson , 509 U.S. at 367;

cf. Boyde , 494 U.S. at 383-84 (instruction to jury to consider all evidence

received was sufficient such that reasonable jurors would not have ignored

mitigating evidence).

Finally, Mr. Boyd argues that instructions seven and nine permitted the jury

to weigh the aggravating circumstances against each mitigating circumstance, thus

authorizing the death penalty even if the mitigating circumstances as a whole

outweighed the aggravating circumstances. Instructions seven and nine provided

as follows:

> If you unanimously find that one or more of the aggravating
> circumstances existed beyond a reasonable doubt, unless you also
> unanimously find that any such aggravating circumstance or
> circumstances outweigh the finding of one or more mitigating
> circumstances, the death penalty shall not be imposed.

O.R. 131 (No. 7).

> You are instructed that mitigating circumstances are not
> specifically enumerated in the Statutes of this State but the law of
> this State sets up certain minimum mitigating circumstances you shall
> follow as guidelines in determining which sentence you impose in
> this case. You shall consider any or all of these minimum mitigating
> circumstances which you find apply to the facts and circumstances of
> this case. You are not limited in your consideration to these
> minimum mitigating circumstances. You may consider any additional
> mitigating circumstance, if any, you find from the evidence in this
> case. What are and what are not additional mitigating circumstances
> are for you the jury to determine.
> Evidence has been offered as to the following mitigating
> circumstances:
> 1. The Defendant did not plan to kill the deceased.

-39-

Whether these circumstances existed and what degree and weight you are to place on them must be decided by you.

Id. at 133 (No. 9).

Mr. Boyd makes no specific argument about instruction number nine. He argues instruction number seven does "not by itself constitute a federal constitutional error," Appellant's Opening Br. at 69, but that it is contrary to Oklahoma law, citing Okla. Stat. Ann. tit. 21, § 701.11. Section 701.11 provides that the death penalty shall not be imposed "if it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances." Id. The language of the instruction is neither contrary to Oklahoma law nor constitutionally infirm. [9]

## XII.  Denial of Evidentiary Hearing

We apply the AEDPA provisions regarding the grant of an evidentiary hearing in federal district court. Under Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998), the restriction on an evidentiary hearing contained in 2254(e)(2) does not apply because Mr. Boyd "diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so."

---

[9]Mr. Boyd recognizes that we have rejected other challenges to this particular instruction in Duvall, 139 F.3d at 790-91.

-40-

Id. at 1253. [10] He is therefore "entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." Id.

Applying that test, an evidentiary hearing is not warranted. Mr. Boyd's request for further fact finding is general. He fails to indicate what specific facts he would prove through a hearing. Cf. Stouffer v. Reynolds, 168 F.3d 1155, 1168 (10th Cir. 1999) (district court erred in failing to hold evidentiary hearing to assess ineffective assistance of counsel claims where the petitioner alleged specific, particular facts which if proved would entitle him to relief).

## CONCLUSION

We have carefully reviewed the record in this case and each of Mr. Boyd's arguments. We have further carefully reviewed any state court determinations on the merits of Mr. Boyd's claims. We conclude that, under any view of the AEDPA standards, the state court's decisions are not "contrary to, or involve[] an unreasonable application of, clearly established Federal law," nor have they "resulted in a decision that was based on an unreasonable determination of the

---

[10]On direct appeal, Mr. Boyd sought a remand for an evidentiary hearing to supplement the record for his ineffective assistance of counsel claims. The Oklahoma Court of Criminal Appeals denied his request. See Boyd, 839 P.2d at 1373 n.4; Boyd, 915 P.2d at 925 n.6.

facts in light of the evidence presented." 28 U.S.C. § 2254(d). We therefore AFFIRM the district court's decision denying Mr. Boyd's petition for a writ of habeas corpus.