**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 12-4081 |
| LEVI GENE STRASSER, | (D.C. No. 2:12-CV-00182-TC and D.C. No. 2:09-CR-00840-TC-2) |
| Defendant-Appellant. | (D. Utah) |

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE,** Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

Levi Gene Strasser, a federal prisoner appearing pro se, requests a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2255 petition alleging ineffective assistance of counsel.  We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and deny his request for a COA.

I.

Strasser pleaded guilty to charges of conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Strasser and five co-defendants

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

were charged with four counts of drug trafficking. Pursuant to this scheme, Strasser, as a mid-level supplier, received oxycodone pills from a co-defendant and subsequently transported the pills to Las Vegas, Nevada. Thereafter, Strasser would distribute the pills to additional confederates who would then sell them. Two of these recipients were Michael Diaz and Erick Gleave.

In his plea agreement, Strasser admitted that he conspired to distribute approximately 4,000 pills. The Presentence Investigation Report (PSR) and the district court at sentencing attributed 6,000 pills to Strasser in light of additional pills found in his co-defendant's possession at the time of the co-defendant's arrest. See U.S.S.G. § 1B1.3 cmt. 2 ("In the case of a jointly undertaken criminal activity, . . . a defendant is accountable for the conduct . . . of others that was both: (A) in furtherance of the jointly undertaken criminal activity; and (B) reasonably foreseeable in connection with that criminal activity."); R. at 39-40.

Accordingly, Strasser had a guideline range of 135 to 168 months: he had a criminal history category of III and an offense level of 31, after applying a three-level downward adjustment for acceptance of responsibility. R. at 37. The district court varied downward and sentenced him to 72 months' imprisonment, which this court affirmed on October 25, 2011. Id. at 37-38; United States v. Strasser, 445 F. App'x 109, 116 (10th Cir. 2011). This court held the attribution of 6,000 pills and the district court's consideration of a letter written by Strasser's in-laws were not plain error and affirmed Strasser's sentence as procedurally and

substantively reasonable. Strasser, 445 F. App'x at 111 n.2, 116. When he appealed his sentence, Strasser also asserted that his counsel was ineffective. However, because this claim was not brought in a collateral proceeding, and not presented first to the district court, this court declined to address his claim on direct appeal of his sentence. Id. at 115-16. Thereafter, Strasser moved the district court to vacate his sentence under § 2255 for ineffective assistance of counsel, which the district court denied. The district court also denied Strasser's motion to reconsider and request for a COA to appeal that denial. R. at 94-95.

## II.

Before a defendant may appeal a district court's denial of a motion to vacate a sentence, that defendant must first obtain a COA. This court may grant a COA only if the defendant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When determining whether to grant a COA, we do not decide the merits of the constitutional violation alleged. Rather, we determine whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). "We recognize that in determining whether to issue a COA, a 'full consideration of the factual or legal bases adduced in support of the claims' is not required." United States v. Moya,

3

676 F.3d 1211, 1213 (10th Cir. 2012) (quoting Miller–El v. Cockrell, 537 U.S. 322, 336 (2003)). "Keeping in mind the standard of review governing a request for a [COA], . . . 'the district court's legal rulings on a § 2255 motion [are reviewed] de novo and its findings of fact for clear error.'" United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000) (quoting United States v. Pearce, 146 F.3d 771, 774 (10th Cir. 1998)). Here, Strasser alleges that his Sixth Amendment rights were violated by his counsel's ineffective representation at sentencing.

To establish a Sixth Amendment claim for ineffective assistance of counsel, a criminal defendant must establish that his counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). A deficient performance is one that falls "below an objective standard of reasonableness." Id. at 687-88. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When a defendant alleges ineffective assistance at the sentencing stage, "any amount of actual jail time [as a result of the deficient performance] has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001). A defendant's failure to establish either deficient performance or prejudice is fatal to his claim. Hooks v. Workman, 689 F.3d 1148, 1186 (10th Cir. 2012) (stating that "[t]hese two prongs may be

4

addressed in any order").  Because Strasser appears pro se, we construe his pleadings liberally.  See Bear v. Patton, 451 F.3d 639, 641 (10th Cir. 2006).

III.

Strasser alleges that his counsel was deficient in the following ways:  1) his counsel failed to challenge inclusion of 1,885 pills found in a co-defendant's home; 2) his counsel failed to stress the petty nature of his criminal history offenses; and 3) his counsel failed to stress Strasser's reluctance to enter the conspiracy and his co-defendants' persistence that he enter the conspiracy.

Regarding the first alleged error, Strasser admitted in his plea agreement that 4,000 pills were involved in the conspiracy to distribute.  He objects to the district court's attribution of 6,000 pills during sentencing and argues his counsel was ineffective by failing to object to the 1,885 pills found during a search of Gleave's home.  Strasser argues that it was "hypocrisy" for the district court to attribute those pills to him when it did not attribute the 1,885 pills to co-defendant Diaz at Diaz's sentencing.  See Aplt. Br. at 5-6.  However, there is an important distinguishing factor between the two defendants:  Diaz cooperated with the federal agents and set up the co-defendant who possessed the 1,885 pills, unlike Strasser, and the district court did not attribute those pills to Diaz because such attribution would deter future criminals' cooperation in undercover operations.  See id. at 6 (citing Diaz Sentencing Tr., United States v. Diaz, No. 2:09-cr-00840-TC-1 (D. Utah May 11, 2011), ECF No. 202, at 2-3).  Moreover,

5

the district court found that an objection would be useless in light of co-defendant Diaz's statement to federal agents that Strasser was his source in Las Vegas and that Strasser and another co-defendant brought 7,000 pills to Utah. R. at 40. Additionally, Gleave told federal agents that he received the 1,885 pills from Diaz, who had received them from Las Vegas. Id. at 41. Because this evidence established by a preponderance of the evidence that the 1,885 pills were attributable to Strasser, the district court concluded that Strasser's counsel did not fall below his professional standards by not objecting to its inclusion. We agree.

Reasonable jurists would not debate the district court's conclusion that the failure of Strasser's counsel to object to the pills was not below professional standards in light of the preponderance of the evidence attributing the pills to Strasser. See U.S.S.G. § 1B1.3; Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010) ("[T]he performance must . . . 'have been completely unreasonable, not merely wrong.'" (citation omitted) (quoting Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999))).

Regarding the second and third alleged errors, Strasser's counsel argued to the district court that the nature of his previous criminal offenses warranted a lesser sentence and that Strasser's involvement in the crime was less extensive than his confederates. R. at 41-42. Counsel argued that Strasser's criminal history offenses were due to mental health and substance abuse problems, which warranted a 48-month sentence. Id. Strasser's counsel further argued that his

6

criminal history category overrepresented his client's criminal activity given the petty nature of his crimes. Id. at 42. Finally, Strasser's counsel argued that his client was not as involved as his confederates in selling the drugs and was simply a link between members of the conspiracy. Id. at 41-42. The district court concluded that this representation was adequate and did not amount to a violation of Strasser's Sixth Amendment rights, which reasonable jurists would not debate.

Strasser next alleges that his counsel was ineffective by failing to adequately argue against a letter written by his in-laws that the district court considered during sentencing. However, Strasser's counsel argued to the district court that this letter should be given little weight because it was written by his ex-wife's parents, rather than his ex-wife. While Strasser may have been able to provide more factual context for this letter to undercut its substance, this did not lead the district court to conclude that the representation he received fell below professional standards. See Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) ("Our case law makes clear that '[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" (quoting Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1537 (10th Cir. 1994))). Moreover, the district court concluded that given the substantial downward variance Strasser received, he had not satisfied the prejudice prong of Strickland. In light of the district court's downward variance from the guideline range, Strasser has not shown that it is "more likely

7

than not" that the court would impose a lesser sentence if his counsel had more persuasively argued these alleged points of error; rather, his argument is essentially that the alleged deficiency "had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693.

Finally, Strasser argues the district court erroneously deprived him of an evidentiary hearing regarding his claims of ineffective assistance of counsel. "We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion."  United States v. Harms, 371 F.3d 1208, 1210 (10th Cir. 2004). Under § 2255, the district court is required to conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996).  Because the district court concluded, and we agree, that Strasser is not entitled to relief, the district court did not abuse its discretion by denying his request for an evidentiary hearing.

We agree with the district court's conclusion that Strasser's allegations of error did not amount to a constitutional deprivation and that reasonable jurists would not debate the correctness of this decision.  Because Strasser has not made a substantial showing of the denial of a constitutional right, he is not entitled to a

8

COA.  28 U.S.C. § 2253(c)(2).  Accordingly, we DENY Strasser's request for a

COA and DISMISS this matter.

                                        Entered for the Court


                                        Mary Beck Briscoe
                                        Chief Judge